## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF ORLANDO POLICE OFFICERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>FIVE BELOW, INC., JOEL ANDERSON, KENNETH BULL, and KRISTY CHIPMAN,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT -- CLASS ACTION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff City of Orlando Police Officers' Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (i) regulatory filings made by Five Below, Inc. ("Five Below" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued and disseminated by the Company; (iii) analyst reports concerning the Company and its subsidiaries; (iv) transcripts of Five Below's investor conference calls; and (v) other public information regarding the Company.

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this securities class action on behalf of all investors who purchased or otherwise acquired Five Below common stock between December 1, 2022, and July 16, 2024, inclusive (the "Class Period").  The claims asserted herein are alleged against Five Below and certain of the Company's current and former senior executives (collectively, "Defendants"), and

arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, promulgated thereunder.

2.      Founded in 2002, Five Below is headquartered in Philadelphia, Pennsylvania.  Five Below has traditionally targeted a customer segment of tweens and teens by offering popular, or "trend-right" merchandise, with most items priced at $5 and below.  Five Below offers various types of merchandise within this price range, including clothing, sporting equipment, and small accessories such as phone cases and chargers.  Five Below's business depends on identifying and sourcing trend-right products at low costs and then quickly selling them to capitalize on existing trends before those trends fade and new trends emerge.

3.      Throughout the Class Period, investors were keenly focused on the Company's ability to execute on its business plan in the face of potential macroeconomic headwinds following the COVID-19 pandemic.  The market also questioned whether Five Below's business may have been pressured by increased rates of lost or stolen inventory, known in the retail industry as "shrink," because, among other things, Defendants often attributed disappointing financial results to shrink.  During the Class Period, Five Below executives repeatedly affirmed the Company's ability to execute on trend-right products, and often attributed pressure on earnings to shrink and macroeconomic factors.

4.      These assurances were false.  In truth, Five Below was struggling to identify and capitalize on trending products, and the Company's growth plan was stalling.  Rather than admit that Five Below was struggling to identify and market profitable trends, Five Below executives repeatedly blamed the Company's disappointing financial results on elevated levels of shrink and other macroeconomic factors, while assuring investors that the Company's growth and sales

remained intact.  As a result of Defendants' misrepresentations, shares of Five Below common stock traded at artificially inflated prices during the Class Period.

5.      The truth began to emerge on March 20, 2024, when the Company reported fourth quarter 2023 results and missed Earnings Per Share ("EPS") analyst consensus by $0.13 per share, or approximately 3.5%.  These disclosures caused the price of Five Below stock to decline by $32.18 per share, or over 15%.

6.      Despite these disappointing results, Five Below's senior executives continued to downplay broader problems with the Company's business and blamed the disappointing results entirely on greater than expected levels of shrink.  Indeed, the Company's former Chief Executive Officer, Defendant Joel Anderson ("Anderson") told investors that the negative results could be "fully attributed to higher-than-planned shrink."

7.      On June 5, 2024, however, Five Below released its first quarter 2024 results and disclosed a nearly 15% year-over-year decline in operating income, and made what analysts described as "deep cuts" to its sales guidance for the remainder of the year after first quarter sales "fell short." As a result of these disclosures, the price of Five Below shares declined by $14.07 per share, or approximately 11%.

8.      The following month, Five Below revealed that its financial and operational problems were significantly worse than represented.  On July 16, 2024, after the market closed, Five Below announced the sudden departure of its Chief Executive Officer, Defendant Anderson, effective immediately, and further reduced its net sales and earnings guidance, which had already been severely cut just weeks prior.  These disclosures caused the Company's stock price to decline by another $25.57 per share, or 25%.

9.      Analysts subsequently reported that, in their conversations with the Company following this announcement, Five Below's management admitted that the Company had "incurred a lot of self-inflicted wounds" and "needed to refocus their product on 'trend right' goods and strong value," which stood in stark contrast to Defendants' prior representations.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1391(b) and (c).  Defendants conduct business in this District and the majority of Defendants' actions and misconduct occurred within this District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff City of Orlando Police Officers' Pension Fund is a single-employer, defined benefit public pension fund.  Plaintiff manages approximately $700 million in assets for

the benefit of its approximately 1,700 active and retired participants.  As set forth in the attached Certification, Plaintiff acquired Five Below common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.    Defendant Five Below is a Pennsylvania corporation with principal executive offices located at 701 Market Street, Suite 300, Philadelphia, Pennsylvania.  Five Below's common stock trades in an efficient market on the Nasdaq Stock Market LLC ("NASDAQ") under the ticker symbol "FIVE."

17.    Defendant Anderson served as Five Below's Chief Executive Officer and President at all relevant times until July 15, 2024.

18.    Defendant Kenneth Bull ("Bull") has served as Five Below's interim President and Chief Executive Officer since July 15, 2024, and as Chief Operating Officer since March 2023. He also served as Chief Financial Officer from 2012 to July 2023.

19.    Defendant Kristy Chipman ("Chipman") has served as Five Below's Chief Financial Officer and Treasurer since July 2023.

20.    Defendants Anderson, Bull, and Chipman are sometimes referred to herein as the "Individual Defendants."

21.    The Individual Defendants possessed the power and authority to control the contents of Five Below's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Five Below's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Five Below, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to

and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Five Below is an "extreme value" retailer offering merchandise targeted at the "tween" and teen demographic.  Five Below offers an edited assortment of popular, or "trend-right" merchandise, with most of its products priced at or below $5.

23.     Five Below's edited assortment of merchandise, largely within this $5 price range, includes clothing, sporting equipment, and small tech accessories such as phone cases and chargers.  The Company's business depends on identifying and sourcing trend-right products at low costs and then selling the products quickly enough to capitalize on existing trends before new trends emerge.

24.     In the years leading up to and during the Class Period, many retail stores, including Five Below, were negatively impacted by increases in inventory that were lost, stolen, or otherwise unaccounted for, which is commonly referred to in the industry as "shrink."  In response to shrink, many retailers began to implement measures to reduce the amount of stolen or lost inventory, which was negatively impacting profits.  Throughout the Class Period, investors were keenly focused on Five Below's ability to manage shrink and its impact on the Company's growth, and Defendants took advantage of investors' focus on this issue to mask broader problems with the Company's business.

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on December 1, 2022, the first day the markets were open for trading after Five Below held a conference call with analysts on November 30, 2022, to discuss the Company's earnings and operations for the third quarter of 2022.[1]  During that earnings call, Defendants presented strong financial results and growth, including at the Company's newly opened stores.  Defendants also discussed the Company's strong execution of its business model. For instance, Defendant Anderson boasted about the "great progress" Five Below had made "on several initiatives in the third quarter," and assured investors that Five Below was "in a great position for the fourth quarter" based on Five Below's ability to "offer the extreme value our customers need to help alleviate macro pressures."  Defendant Bull buttressed these statements by representing Five Below's ability to "move quickly to adjust to changing customer preferences."

26.     On March 15, 2023, Five Below held a conference call with analysts to discuss the Company's earnings and operations for the fourth quarter of 2022.  During that call, Defendant Anderson assured investors of the Company's focus on "sourcing an incredible trend-right assortment for our customers at outstanding value," and that the Company "stay[ed] on top of hot trends and swiftly move[d] to capitalize on them."

27.     The next day, on March 16, 2023, the Company filed its annual report on Form 10-K for the fiscal year ended January 28, 2023.  In the Form 10-K, the Company represented that it "monitor[ed] trends in our target demographic market, historical sales trends of current and prior products and the success of new product launches to ensure that our merchandise is relevant for our customers" and stated that it employed a "highly planned merchandise strategy focused on trend-right and everyday products supplemented by selected opportunistic purchases from our

---

[1] Five Below operates on a 52/53-week fiscal year ending on the Saturday closest to January 31.

vendors to drive traffic." The Company also purported to warn investors of the hypothetical risk that "[i]f we are unable to quickly respond to developing trends . . . then the demand for our products, which are discretionary, and our market share could be adversely affected."

28. On June 1, 2023, Five Below held a conference call with analysts to discuss the Company's earnings and operations for the first quarter of 2023. During that call, while discussing Five Below's "strategic pillars," Defendant Anderson discussed the Company's purportedly "relentless" work "scouring the globe to pursue trends [with] newness and value." In response to a question from an analyst regarding the impact of shrink on the Company, Defendant Anderson stated that Five Below had "trued up" their reserve for shrink in 2022, which "had an impact on [Five Below's] fourth quarter." Defendant Anderson also stated that shrink was "accruing at [] higher rates" but that Five Below was "doing things on our part to mitigate shrink."

29. On August 30, 2023, Five Below held a conference call with analysts to discuss the Company's earnings and operations for the second quarter of 2023. On that call, Defendant Anderson discussed the Company's ability to identify new trends, telling investors that Five Below "persistently pursue[d] trends [with] newness and value, both in the United States and across the globe." Defendant Chipman boasted about the "great operational progress against key strategic objectives" that Five Below had made. Defendants, however, were forced to lower guidance that day, including reducing operating margin expectations by approximately 20 basis points. Defendant Anderson attributed this reduction to shrink, telling investors that the change "pretty much is all based on the changes we're making with the assumption of shrink."

30. On November 29, 2023, Five Below held a conference call with analysts to discuss the Company's earnings and operations for the third quarter of 2023. During that call, Defendant Anderson told investors that Five Below was "pleased with the positive trends we've seen in both

customer acquisition and retention," and that the Company was "focused on delivering incredible value, trend-right products and a really fun shopping experience for the holidays as well as building for the long-term future." But the Company also announced a decline in gross margin, which Defendant Chipman told investors was "primarily driven by recording actual shrink results for the stores that completed their physical inventories."

31.     The statements referenced in ¶¶ 25-30 were materially false and misleading, and Defendants failed to disclose material facts necessary to make the statements not false and misleading. Specifically, throughout the Class Period, the Company was experiencing significant and problematic trends in its business, particularly concerning the Company's execution and its struggles to successfully identify and market trend-right products. Those struggles were "self-inflicted" and caused by a loss of focus on "trend-right" goods. Accordingly, Defendants' representations concerning the Company's focus on sourcing "trend-right" merchandise were false or misleading, as were Defendants' representations that Five Below's poor financial results were "primarily driven" by shrink.

## The Truth Emerges

32.     Investors began to learn the truth on March 20, 2024, when the Company reported its fourth quarter results for 2023, which missed analysts' consensus EPS target of $3.78 per share by $0.13 per share, or approximately 3.5%. These disclosures caused Five Below's share price to decline by $32.18 per share, or over 15%, from a closing price of $208.97 per share on March 20, 2024, to a closing price of $176.79 per share on March 21, 2024. Despite these disclosures, Five Below continued to represent shrink as the primary reason for the Company's disappointing financial results. For example, during the Company's earnings call that day, Defendant Anderson told investors that the negative results could be "fully attributed to higher-than-planned shrink."

33.     Then, on June 5, 2024, the Company released its results for the first quarter of 2024, disclosing that its operating income had declined by nearly 15% year-over-year, and reduced net sales and earnings guidance in light of weak first quarter sales.  As a result of these disclosures, the Company's stock price declined by an additional $14.07 per share, or approximately 11%, from a closing price of $132.79 per share on June 5, 2024, to a closing price of $118.72 per share on June 6, 2024.

34.     Despite these disclosures, Five Below continued to assure investors that the Company was executing effectively on its business strategy.  For example, on the Company's earnings call held later that day, Defendant Anderson stated that "chasing trends has always been a strength of ours and we will continue to quickly identify and capitalize on trends, bringing them in store quickly and communicate the value we provide to customers across our social media channels."

35.     However, a month later, on July 16, 2024, Five Below issued a press release announcing the sudden departure of its longtime Chief Executive Officer, Defendant Anderson, effective immediately, and simultaneously reduced its second quarter guidance.  Specifically, the Company disclosed that "[c]omparable sales decreased 5.0% versus the restated and comparable period ended July 15, 2023," and that as a result, Five Below expected "sales for the fiscal second quarter ending August 3, 2024 to be in the range of $820 million to $826 million and assume[d] an approximate 6% to 7% decrease in comparable sales."  The Company further stated that "[d]iluted income per common share is expected to be in the range of $0.53 to $0.56."  These disclosures caused the Company's stock price to decline by another $25.57 per share, or 25%, from a closing price of $102.07 per share on July 16, 2024, to a closing price of $76.50 per share on July 17, 2024.

36.     After the Class Period ended, on August 28, 2024, Five Below held a conference call with analysts to discuss the Company's earnings and operations for the second quarter of 2024. Contrary to Defendants' prior assurances that Five Below was able to execute effectively on its market strategy to identify and market trends, Defendant Bull admitted that over the past several years, Five Below had "over-expanded" its product line "without the strict editing process of past years and without the key item focus that screen value and differentiation."  Defendant Bull also shockingly admitted that what Five Below had "got away from was the core part of our business around pre-teens and teens and really the mission for us in delivering an edited assortment, trend product, high quality at extreme value," going as far as to say that the Company had "lost our way."

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

38.     During the Class Period, as detailed in this complaint, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Five Below common stock and operated as a fraud or deceit on the Class (defined below).  Later, when Defendants' prior misrepresentations and risks concealed by the fraudulent conduct alleged in this complaint materialized and were disclosed to the market, the price of Five Below common stock fell precipitously.  As a result of their acquisition of Five Below common stock during the Class Period—and Defendants' material misstatements and omissions—Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Five Below common stock during the Class Period (the "Class"); and were damaged by the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Five Below common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Five Below or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Five Below has over 55 million shares of common stock outstanding, owned by at least hundreds or thousands of investors.

42.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(e)     Whether Defendants' misconduct impacted the price of Five Below common stock;

(f)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(g)     The extent of damages sustained by Class members and the appropriate measure of damages.

43.     Plaintiff suffered damages as a result of the violations of the federal securities laws alleged herein that will ensure Plaintiff's vigorous prosecution of the Class's claims.

44.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

45.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements described in this complaint.  Many of the specific statements described in this complaint were not identified as "forward-looking" when made.  To the extent that there were any forward-looking statements, there was no meaningful cautionary language identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements described in this complaint, Defendants are liable for those false forward-looking statements because at the time each was made, the particular speaker knew that the particular forward-looking statement was false or misleading, or the forward-looking statement was authorized or approved by an executive officer of Five Below who knew that the statement was false or misleading when made.

## PRESUMPTION OF RELIANCE

48.     At all relevant times, the market for Five Below's common stock was an efficient market for the following reasons, among others:

(a)     Five Below common stock met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     Five Below filed periodic public reports with the SEC and NASDAQ;

(c)     Five Below regularly and publicly communicated with investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Five Below was followed by securities analysts employed by numerous major brokerage firms, who wrote reports that were distributed to the sales forces and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Five Below common stock promptly digested current information regarding Five Below from all publicly available sources and reflected that information in the price of Five Below common stock.  Under these circumstances, all purchasers of Five Below common stock during the Class Period suffered similar injuries through their purchase of Five Below common stock at artificially inflated prices, and the presumption of reliance applies.

50.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Five Below's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of Five Below's ability to execute its business strategy, as alleged above, that requirement is satisfied here.

## CAUSES OF ACTION

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Five Below common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Five Below common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Five Below common stock.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Five Below's finances and business prospects.

55.     By virtue of their positions at Five Below, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Five Below, the Individual Defendants had knowledge of the details of Five Below's internal affairs.

57.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Five Below.  As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Five Below's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of Five Below common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Five Below's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Five Below common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

58.     During the Class Period, Five Below common stock was traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Five Below common stock at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Five Below common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Five Below common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

61.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, the Individual Defendants participated in the operation and management of Five Below, and conducted and participated, directly and indirectly, in the conduct of Five Below's business affairs.  Because of their senior positions, they knew the adverse non-public information about Five Below's misrepresentations.

63.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Five Below, and to correct promptly any public statements issued by Five Below which had become materially false or misleading.

64.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Five Below disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Five Below to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of Five Below within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Five Below common stock.

65.     Each of the Individual Defendants, therefore, acted as a controlling person of Five Below.  By reason of their senior management positions and/or being directors of Five Below, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Five Below to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Five Below and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against Five Below and the Individual Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding any equitable, injunctive, or other further relief that the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 16, 2024

Respectfully submitted,

*s/ Ryan T. Degnan*
Ryan T. Degnan (PA #309305)
**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
Naumon A. Amjed (PA #309520)
Joshua Keszczyk (PA # 330517)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com
jkeszczyk@ktmc.com

*Liaison Counsel for Plaintiff*

**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
Hannah Ross
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff*

**KLAUSNER KAUFMAN JENSEN**
   **& LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Plaintiff*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Jay Smith, on behalf of City of Orlando Police Officers' Pension Fund ("Orlando Police"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Orlando Police and I am authorized to sign this certification on its behalf. I have reviewed the complaint and authorize its filing by counsel.

2. Orlando Police did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Orlando Police is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Orlando Police's transactions in the Five Below, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Orlando Police has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *In re Vertiv Holdings Co. Securities Litigation*, No. 22-cv-3572 (S.D.N.Y.)

6. Orlando Police will not accept any payment for serving as a representative party on behalf of the Class beyond Orlando Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12 day of September, 2024.

Jay Smith
Chairman
*City of Orlando Police Officers' Pension Fund*

**City of Orlando Police Officers' Pension Fund**
**Transactions in Five Below, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 1/4/2023 | 1,591 | 175.2000 |
| Purchase | 1/31/2023 | 10 | 195.9657 |
| Purchase | 8/15/2023 | 199 | 195.6710 |
| Purchase | 8/16/2023 | 142 | 196.8359 |
| Purchase | 9/21/2023 | 18 | 149.1357 |
| Purchase | 9/22/2023 | 295 | 149.1675 |
| Purchase | 9/27/2023 | 149 | 149.9478 |
| Purchase | 9/28/2023 | 60 | 156.1012 |
| Purchase | 9/29/2023 | 536 | 162.7500 |
| Sale | 5/16/2024 | (135) | 142.9052 |
| Sale | 5/17/2024 | (177) | 139.3061 |
| Sale | 5/20/2024 | (219) | 134.1097 |
| Sale | 5/21/2024 | (144) | 134.1236 |
| Sale | 5/22/2024 | (278) | 130.5691 |
| Sale | 6/12/2024 | (60) | 117.5097 |
| Sale | 6/12/2024 | (196) | 117.3460 |
| Sale | 6/13/2024 | (427) | 113.7953 |
| Sale | 6/14/2024 | (400) | 113.0070 |
| Sale | 6/17/2024 | (494) | 114.5195 |
| Sale | 6/17/2024 | (97) | 112.7075 |
| Sale | 6/18/2024 | (312) | 114.2474 |
| Sale | 6/18/2024 | (61) | 114.4908 |